IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

_____

DIONISIO CRESPO,

                                        Plaintiff,

   v.                                                      Civil Action No.
                                                              9:02-CV-1587 (NAM/DEP)

GLENN S. GOORD, *et al.*,

                                        Defendants.

_____

APPEARANCES:                                  OF COUNSEL:

FOR PLAINTIFF:

DIONISIO CRESPO, *Pro Se*


FOR DEFENDANT:

HON. ELIOT SPITZER                            MARIA MORAN, ESQ.
Office of the Attorney General                Ass't Attorney General
State of New York
615 Erie Boulevard West
Suite 102
Syracuse, NY 13204-2455

DAVID E. PEEBLES
U.S. MAGISTRATE JUDGE

## REPORT AND RECOMMENDATION

    Plaintiff Dionisio Crespo, a prison inmate in the custody of the New

York State Department of Correctional Services ("DOCS"), has

commenced this action against the Commissioner of the DOCS and

several other employees of the agency, alleging deprivation of his civil

rights. In his complaint, as amended, plaintiff asserts that defendants were

deliberately indifferent to his serious medical needs, thereby subjecting him

to cruel and unusual punishment in violation of the Eighth and Fourteenth

Amendments.

Currently pending before the court is a motion by the defendants

seeking the entry of summary judgment dismissing plaintiff's deliberate

indifference claims on the merits. In their motion, defendants argue that

based upon the record, no reasonable factfinder could conclude plaintiff

did not receive adequate medical treatment for his injuries. Defendants

Goord and Newton also seek dismissal of plaintiff's claims against them

based upon the alleged lack of their personal involvement in the

constitutional violations alleged. For the reasons set forth below, I

recommend that the motion of defendants Goord and Newton for dismissal

of plaintiff's claims against them, based upon the lack of his personal

involvement, be granted, but that defendants' motion be denied in all other

respects.

I.    <u>BACKGROUND</u>

At the times relevant to his claims, including from the time of his arrival there in March of 1995 until his transfer to another facility in October, 2000, plaintiff was a New York State prison inmate confined within the Watertown Correctional Facility ("Watertown").  Defendants' Exhibits (Dkt. No. 32) Exh. A.  Plaintiff's claims in this action stem from an incident which occurred at Watertown on or about March 21, 2000, when he reportedly hit his right hand against the wall while sleeping.[1]  Amended Complaint (Dkt. No. 5) ¶ 13.  As a result of the incident plaintiff appeared on that date at an emergency sick call in the facility's health clinic, complaining of pain in his right hand, and was seen at that time by defendant L. Diehl, a registered nurse.  Defendants' Exhibits (Dkt. No. 32) Exh. B, Ambulatory Health Records ("AHR") at 1; Okay Aff. (Dkt. No. 32) ¶ 4; Amatucci Aff. (Dkt. No. 32) ¶ 4.  Upon examination, Nurse Diehl observed swelling and tenderness in the anterior area of Crespo's right hand, near his wrist, and prescribed Tylenol and application of ice to the

---

[1]         However skeptical one might be regarding the plaintiff's version of the events giving rise to this injury, particularly in view of a subsequent incident involving an altercation between Crespo and another inmate requiring that he undergo outside emergency treatment, the circumstances under which plaintiff's hand was broken are not legally relevant to the constitutional sufficiency of the treatment which he received for the injury.  *See*, *e.g.*, *Watson v. Caton*, 984 F.2d 537, 540 (1st Cir. 1993) (reversing dismissal under 28 U.S.C. § 1915 of medical indifference claim in which prison nurse refused treatment for the plaintiff's hand injury, which required surgery, on the basis that the injury had occurred before the plaintiff's incarceration).

area, as necessary, encouraging plaintiff to return to the clinic if further treatment was desired. *Id.*

Plaintiff continued to experience pain and swelling in his right hand after that initial treatment, resulting in additional visits to the clinic where he was seen on March 22, 2000, by D. Misercola, a registered nurse; on March 26, 2000, when he received treatment from M. Dietterich, a registered nurse; on March 27, 2000, when he was seen by L. Shannon, a registered nurse; and on April 4, 2000 when he was again examined by Nurse Misercola. Defendants' Exhibits (Dkt. No. 32) Exh. B, at 2-3; Okay Aff. (Dkt. No. 32) ¶¶ 5-8; Amatucci Aff. (Dkt. No. 32) ¶¶ 5-8. During each of those visits plaintiff was prescribed various pain relief medications, including Tylenol and Advil, and was told to utilize ice or soaking to address the pain and swelling. *Id.* It was not until April 4, 2000 that health care workers at the facility suggested that Dr. Amatucci, a DOCS physician employed at the facility, be consulted regarding plaintiff's circumstances. Okay Aff. (Dkt. No. 32) ¶ 8; Amatucci Aff. (Dkt. No. 32) ¶ 8.

After reviewing plaintiff's situation on April 4, 2000, Dr. Amatucci determined that x-rays should be taken. Amatucci Aff. (Dkt. No. 32) ¶ 8. In light of the fact that the health clinic at Watertown was not equipped to

4

take x-rays, arrangements were made for those x-rays to be taken on April

14, 2000 at the Gouverneur Correctional Facility, and then transmitted to

an outside radiologist for review.  Okay Aff. (Dkt. No. 32) ¶¶ 9-10.  During

the intervening period while plaintiff was waiting to be x-rayed, he was

seen at the clinic on April 6, 2000 and April 14, 2000, again complaining of

pain and swelling.  Okay Aff. (Dkt. No. 32) ¶¶ 11-12.  During those visits

plaintiff was prescribed Ibuprofen pills and an ace bandage for support.  *Id.*

On April 16, 2000 the results of plaintiff's x-rays were reported to

medical staff at Watertown, reflecting a probable two bone fracture of the

right hand.  Okay Aff. (Dkt. No. 32) ¶ 13.  Having determined that plaintiff

had experienced a fracture, and in light of Dr. Amatucci's vacation

schedule, medical staff personnel at Watertown arranged to have plaintiff's

hand examined on April 17, 2000, by an outside physician at a remote

location by means of a teleconferencing system.  *Id.* ¶ 15; Amatucci Aff.

(Dkt. No. 32) ¶ 9. As a result of that examination, plaintiff was transported

to Samaritan Medical Center's emergency room later that same day for

evaluation and treatment. Okay Aff. (Dkt. No. 32) ¶ 15.  After plaintiff was

seen in the hospital's emergency room, a Masson Allen splint and ace

bandage were applied to plaintiff's right hand, and he was discharged with

5

instructions to follow-up with an orthopedic doctor.  *Id.* ¶ 16.

Plaintiff was ultimately seen on April 26, 2000 by an orthopedic specialist, Dr. Ngg Bhat, at the Hepburn Medical Center.  Okay Aff. (Dkt. No. 32) ¶ 19; Amatucci Aff. (Dkt. No. 32) ¶ 11; Defendants' Exhibits (Dkt. No. 32) Exh. E.  Based upon his examination Dr. Bhat concluded that plaintiff suffered from a mini-Bennett's fracture with moderate displacement and pieces of the metacarpal, with evidence of early healing.[2,3]  Amatucci Aff. (Dkt. No. 32) ¶ 11; Defendants' Exhibits (Dkt. No. 32) Exh. E.  In light of his findings, Dr. Bhat recommended against operative treatment. Amatucci Aff. (Dkt. No. 32) ¶ 11; Defendants' Exhibits (Dkt. No. 32) Exh. E. Plaintiff's subsequent request for a second opinion, based upon his concerns over the healing of his right hand, were denied by Dr. Hentchel, the DOCS Regional Medical Director, in consultation with Dr. Amatucci. Okay Aff. (Dkt. No. 17) ¶¶ 17, 22; Amatucci Aff. (Dkt. No. 32) ¶¶ 11-12.

Following his emergency room treatment, plaintiff continued to appear at the facility's health clinic to voice complaints regarding his right

---

[2]  A Bennett's fracture is "a fracture of the base of the first metacarpal bone running into the carpometacarpal joint and complicated by subluxation."  Dorland's Illustrated Medical Dictionary 708 (29th ed. 2000).

[3]  Those findings were confirmed based upon x-rays taken on April 26, 2000.  Amatucci Aff. (Dkt. No. 32) ¶ 11.

hand, reporting continued pain and swelling during visits on May 18, 2000 and May 23, 2000.  Okay Aff. (Dkt. No. 32) ¶¶ 23-24.  Plaintiff's renewed complaints were brought to Dr. Amatucci's attention on or about May 23, 2000, resulting in additional x-rays being taken and a follow-up appointment with Dr. Bhat being scheduled.  Amatucci Aff. (Dkt. No. 32) ¶ 13.  X-rays taken at the Samaritan Medical Center on May 25, 2000 indicated that the fracture base of plaintiff's fifth metacarpal showed signs of early healing, and resulted in renewal of plaintiff's permit for an ace bandage and continued medical excuse from work assignment for an additional thirty days.  *Id.* ¶¶ 14-15.

Plaintiff's second appointment with Dr. Bhat occurred on June 22, 2000.  *Id.* ¶ 17.  Based upon that examination, Dr. Bhat noted that plaintiff's fracture was healing, and there was increased range of motion, resulting in a recommendation against further treatment.  *Id.*

Dr. Amatucci met with plaintiff on June 23, 2000 to discuss Dr. Bhat's findings.  *Id.*  During that meeting, plaintiff was advised that Dr. Hentchel had indicated a willingness, based upon Dr. Amatucci's recommendation, to authorize a referral to a hand specialist, at no expense to Crespo.[4]

---

[4]    The parties dispute whether such a second opinion was ever offered to the plaintiff free of charge.  Despite defendants' assertions to the contrary, plaintiff

Amatucci Aff. (Dkt. No. 32) ¶ 17.  Defendants assert that the offer was

rejected, however, with plaintiff later expressing his desire on June 26,

2000 to go back to work at the prison.  *Id.* ¶¶ 17-18.

Plaintiff's medical records do not reflect the existence of any further

complaints regarding his wrist until August 26, 2000, when he appeared at

the facility's health clinic requiring treatment for multiple injuries suffered

during an apparent altercation with another inmate.  Amatucci Aff. (Dkt. No.

32) ¶ 19; Okay Aff. (Dkt. No. 32) ¶¶ 30-31.

## II.   PROCEDURAL HISTORY

Plaintiff commenced this action on December 23, 2002 and, faced

with a conditional order of dismissal issued on January 9, 2003 by District

Judge Norman A. Mordue advising him that on routine review the court had

found his original complaint to be legally deficient as not complying with the

applicable pleading requirements of the Federal Rules of Civil Procedure,

filed an amended complaint on February 5, 2003.[5]  Dkt. No. 5.  As

───────────────────────

asserts that he was never offered the option of a second opinion.  Plaintiff's Local Rule
7.1(a)(3) Statement (Dkt. No. 34) ¶ 31.

[5]      Plaintiff's amended complaint, which is verified, has been treated
as the equivalent of an affidavit for purposes of the instant motion.  28 U.S.C. § 1746
(1994); Fed. R. Civ. P. 56(e); *Franco v. Kelly*, 854 F.2d 584, 587 (2d Cir. 1998)
(citations omitted); *Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir. 1995); *Yearwood v.
LoPiccolo*, No. 95 CIV. 2544, 1998 WL 474073, at *5-*6 & n.2 (S.D.N.Y. Aug. 10,
1998).

defendants, plaintiff's amended complaint names DOCS Commissioner

Glenn S. Goord; DOCS Nurses L. Diehl, D. Misercola, M. Dietterick and K.

Donaghy; Clinical Nurse Administrator J. Okay; Watertown Correctional

Facility's Health Services Director Dr. G. Amatucci; and J. Newton,

Superintendent of the Watertown Correctional Facility.

Following joinder of issue and completion of discovery, defendants

moved on September 9, 2004 for summary judgment dismissing plaintiff's

complaint.  Dkt. No. 32.  In their motion defendants challenge the legal

sufficiency of plaintiff's deliberate medical indifference claim, and

additionally seek dismissal of plaintiff's claims as against Commissioner

Goord and Superintendent Newton on the independent basis of the lack of

their personal involvement in the constitutional violations alleged.  With the

submission by plaintiff of a response in opposition to defendants' motion on

November 17, 2004, Dkt. No. 34, the motion is ripe for determination and

has been referred to me for the issuance of a report and recommendation

pursuant to 28 U.S.C. § 636(b)(1)(B) and Northern District of New York

Local Rule 72.3(c).  *See also* Fed. R. Civ. P. 72(b).

III.   DISCUSSION

     A.   Summary Judgment Standard

9

Summary judgment is governed by Rule 56 of the Federal Rules of Civil Procedure.  Under that provision, summary judgment is warranted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits . . . show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S. Ct. 2505, 2509-10 (1986); *Security Insurance Co. of Hartford v. Old Dominion Freight Line, Inc.*, 391 F.3d 77, 82-83 (2d Cir. 2004).

When summary judgment is sought, the moving party bears an initial burden of demonstrating that there is no genuine dispute of material fact to be decided with respect to any essential element of the claim in issue; the failure to meet this burden warrants denial of the motion.  *Anderson*, 477 U.S. at 250 n.4, 106 S. Ct. at 2511 n. 4; *Security Insurance*, 391 F.3d at 83.  In the event this initial burden is met, the opposing party must show, through affidavits or otherwise, that there is a material issue of fact for trial.[6]  Fed. R. Civ. P. 56(e); *Celotex*, 477 U.S. at 324, 106 S. Ct. at 2553;

---

[6]     A material fact is genuinely in dispute "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson*, 477 U.S. at

*Anderson*, 477 U.S. at 250, 106 S. Ct. at 2511.

When deciding a summary judgment motion, a court must resolve any ambiguities, and draw all inferences from the facts, in a light most favorable to the nonmoving party. *Wright v. Coughlin*, 132 F.3d 133, 137-38 (2d Cir. 1998). Summary judgment is inappropriate where "review of the record reveals sufficient evidence for a rational trier of fact to find in the [non-movant's] favor." *Treglia v. Town of Manlius*, 313 F.3d 713, 719 (2d Cir. 2002) (citation omitted); *see also Anderson,* 477 U.S. at 250, 106 S. Ct. at 2511 (summary judgment is appropriate only when "there can be but one reasonable conclusion as to the verdict.").

B.    Legal Sufficiency of Plaintiff's Deliberate Indifference Claim

_____The primary thrust of defendants' summary judgment motion challenges the legal sufficiency of plaintiff's claim of deliberate indifference. Characterizing plaintiff's complaint as signifying nothing more than his disagreement with the treatment which he received for his complaints of wrist pain, defendants argue that no reasonable factfinder could conclude,

_____

248, 106 S. Ct. at 2510.  Though *pro se* plaintiffs are entitled to special latitude when defending against summary judgment motions, they must establish more than merely "metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S. Ct. 1348, 1356 (1986); *but see Vital v. Interfaith Med. Ctr.,* 168 F.3d 615, 620-21 (2d Cir. 1999) (noting obligation of court to consider whether *pro se* plaintiff understood nature of summary judgment process).

11

based on the evidence now before the court, that they were deliberately indifferent to plaintiff's medical needs.

The Eighth Amendment's prohibition of cruel and unusual punishment encompasses punishments that involve the "unnecessary and wanton infliction of pain" and are "incompatible with the evolving standards of decency that mark the progress of a maturing society." *Estelle v. Gamble,* 429 U.S. 97, 102-03, 97 S.Ct. 285, 290 (1976) (citations and internal quotations omitted); *see also Whitley v. Albers*, 475 U.S. 312, 319, 106 S.Ct. 1078, 1084 (1986) (citing, *inter alia*, *Estelle)*.  While the Eighth Amendment "'does not mandate comfortable prisons'", neither does it tolerate inhumane treatment of prisoners; thus, the conditions of an inmate's confinement, including medical care, are subject to Eighth Amendment scrutiny.  *Farmer v. Brennan*, 511 U.S. 825, 832, 114 S.Ct. 1970, 1976 (1994) (quoting *Rhodes v. Chapman*, 452 U.S. 337, 349, 101 S.Ct. 2392, 2400 (1981)).

To succeed on a claim alleging that prison conditions, including though not limited to medical care, violate the Eighth Amendment, a plaintiff must satisfy both an objective and subjective requirement; the conditions must be "sufficiently serious" from an objective point of view,

and the plaintiff must additionally demonstrate that prison officials acted

subjectively with "deliberate indifference." *Farmer,* 511 U.S. at 834, 114

S.Ct. at 1977 (citations and internal quotations omitted); *see also Leach v.*

*Dufrain*, 103 F. Supp.2d 542, 546 (N.D.N.Y. 2000) (Kahn, J.) (citing *Wilson*

*v. Seiter*, 501 U.S. 294, 111 S.Ct. 2321 (1991)); *Waldo v. Goord*, No. 97-

CV-1385, 1998 WL 713809, at *2 (N.D.N.Y. Oct. 1, 1998) (Kahn, J. and

Homer, M.J.) (same).

### 1.   Serious Medical Need

In order to state a medical indifference claim under the Eighth

Amendment, a plaintiff must allege a deprivation involving a medical need

which is, in objective terms, "'sufficiently serious'". *Hathaway v. Coughlin*,

37 F.3d 63, 66 (2d Cir. 1994) (citing *Wilson*, 501 U.S. at 298, 111 S. Ct. at

2324), *cert. denied sub nom.*, *Foote v. Hathaway*, 513 U.S. 1154, 115 S.

Ct. 1108 (1995).  A medical need is serious for constitutional purposes if it

presents "'a condition of urgency' that may result in 'degeneration' or

'extreme pain'." *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998)

(citations omitted).  A serious medical need can also exist where "'failure to

treat a prisoner's condition could result in further significant injury or the

unnecessary and wanton infliction of pain'" – since medical conditions vary

in severity, a decision to leave a condition untreated may or may not be unconstitutional, depending on the facts. *Harrison v. Barkley*, 219 F.3d 132, 136-37 (2d Cir. 2000) (quoting, *inter alia*, *Chance*). Relevant factors in making this determination include injury that a "'reasonable doctor or patient would find important and worthy of comment or treatment'", a condition that "'significantly affects'" a prisoner's daily activities, or "'chronic and substantial pain.'" *Chance*, 43 F.3d at 701 (citation omitted).

Although this is not necessarily clear, it appears that the defendant's motion does not challenge the sufficiency of plaintiff's allegations regarding the existence of a serious medical need, but instead is focused upon the deliberate indifference prong of the requisite deliberate indifference standard. In any event, the record in this case discloses the existence of a condition which could be expected to, and in fact apparently did, create pain over an extended period of time as well as, at least according to the plaintiff, leading to some degree of permanency. *E.g.*, Amended Complaint (Dkt. No. 5) ¶¶ 14, 17, 20, 28, 34-42; Defendants' Exhibits (Dkt. No. 32) Exhs. B-E. On this basis, I am unable to say no reasonable factfinder could conclude that plaintiff's medical condition rose to a level of constitutional significance. *Harrison*, 219 F.3d at 136-37 (citing, *inter alia*,

14

*Chance*); *Chance*, 43 F.3d at 701-02.

## 2.   Deliberate Indifference

Deliberate indifference, in a constitutional sense, exists if an official knows of and disregards an excessive risk to inmate health or safety; the official must "both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837, 114 S. Ct. at 1979; *Leach*, 103 F. Supp.2d at 546 (citing *Farmer*); *Waldo*, 1998 WL 713809, at \*2 (same).

It is well established that mere disagreement with a prescribed course of treatment, or even a claim that negligence or medical malpractice has occurred, does not provide a basis to find a violation of the Eighth Amendment.  *Estelle*, 429 U.S. at 105-06, 97 S. Ct. at 201-02; *Chance*, 143 F.3d at 703; *Ross v. Kelly*, 784 F. Supp. 35, 44 (W.D.N.Y.), *aff'd*, 970 F.2d 896 (2d Cir.), *cert. denied*, 506 U.S. 1040, 113 S. Ct. 828 (1992).  Diagnostic techniques and treatments are a "classic example of a matter for medical judgment", and medical staff is vested with broad discretion to determine what method of diagnosis and/or treatment to provide its patients.  *Estelle*, 429 U.S. at 107, 97 S. Ct. at 293; *Chance*, 143 F.3d at 703; *Rosales v. Coughlin*, 10 F. Supp.2d 261, 264 (W.D.N.Y.

15

1998).

At the heart of defendants' motion is their contention that they were not deliberately indifferent to plaintiff's condition, but instead rendered appropriate treatment each time that the plaintiff presented himself.

To be sure, plaintiff's complaints regarding his right hand were not altogether ignored by the defendants.  Indeed, the record reflects that each time he presented himself at the clinic with complaints of pain and swelling Crespo received at least some modicum of treatment.  Plaintiff's condition ultimately led prison officials to arrange for x-rays to be taken at another facility, treatment at a local hospital emergency room, and consultation with an orthopedic specialist.  Yet, during the early visits to the Watertown Health clinic on March 21, 2000 (emergency), March 22, 2000 (regular), March 26, 2000 (emergency) and March 27, 2000 (regular), plaintiff's injury was treated only through prescription of analgesics and use of such topical measures as icing and soaking.  It was not until April 4, 2000 that Crespo's circumstances were reviewed by a prison physician, and x-rays were not taken of his right hand until April 14, 2004 – some twenty-five days after the occurrence which led to the injury – revealing a probable two bone fracture of the right hand.

16

There is one particularly compelling fact which militates against the granting of defendants' summary judgment motion.  An entry dated April 17, 2000, made in plaintiff's prison health records regarding a telephone report received at the facility from a nurse at the Samaritan Medical Center, reflects findings of a one month old fracture of the right hand, noting further that staff at Samaritan "might have manipulated [sic] fracture if seen earlier."  Crespo Aff. (Dkt. No. 34) Exh. A-6.  This AHR entry, which was not included among defendants' exhibits despite the fact that the AHR records supplied by the defendants contain other April 17, 2000 entries as well as a following sequential entry of April 18, 2000, *see* Defendants' Exhibits (Dkt. No. 32) Exh. B, at 5-6, construed in a light most favorable to the plaintiff, suggests that the possibility that the defendants' failure to order x-rays and intervene at an earlier stage may have caused the plaintiff's hand condition to be aggravated, even perhaps with a potential degree of permanency.

In sum, although the record in this case reflects that plaintiff did receive at least some measure of treatment when presenting to prison medical officials with complaints of right hand pain, a reasonable factfinder could conclude that the significant delay in ordering x-rays and the failure

to take additional measures to treat the injury represented deliberate indifference to plaintiff's serious medical needs in a constitutional sense.[7]  I therefore recommend against the grant of summary judgment on the merits of plaintiff's medical indifference claims.

   C.   Personal Involvement

   In their motion, defendants argue that plaintiff's complaint fails to allege, and the record fails to disclose, any involvement on the part of Commissioner Goord and Superintendent Newton in the constitutional violations alleged, suggesting that they are sued by Crespo only by virtue of their supervisory positions.  Those two defendants maintain that such supervisory liability does not lie absent evidence of their active involvement in the conduct alleged or a basis to conclude that they were specifically aware of and positioned to rectify the constitutional violation, but failed to

---

[7]     In his memorandum in opposition to defendants' motion, plaintiff claims constitutional entitlement to treatment which comports with "community standards" based, in part, upon statements made by Commissioner Goord regarding a level of treatment afforded to DOCS inmates.  *See* Plaintiff's Memorandum (Dkt. No. 34) at 3. While the failure to adhere to generally accepted standards of treatment within the community may give rise to a claim of medical malpractice and be actionable as such in an appropriate forum, such a departure alone does not rise to a level sufficient to support a constitutional violation under the Eighth Amendment.  *Estelle*, 429 U.S. at 105-06, 97 S. Ct. at 201-02; *Chance*, 143 F.3d at 703; *Ross*, 784 F. Supp. at 44. According to his amended complaint, plaintiff has in fact pursued a negligence claim against the DOCS in the New York Court of Claims, based upon the circumstances presented in this case.  *See* Amended Complaint (Dkt. No. 5) ¶¶ 30-31.

do so.

Personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under section 1983. *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (citing *Moffitt v. Town of Brookfield*, 950 F.2d 880, 885 (2d Cir. 1991) and *McKinnon v. Patterson*, 568 F.2d 930, 934 (2d Cir. 1977), *cert. denied*, 434 U.S. 1087, 98 S. Ct. 1282 (1978)).  In order to prevail on a section 1983 cause of action against an individual, a plaintiff must show some tangible connection between the constitutional violation alleged and that particular defendant.  *See Bass v. Jackson*, 790 F.2d 260, 263 (2d Cir. 1986).

A supervisor cannot be liable for damages under section 1983 solely by virtue of being a supervisor – there is no *respondeat superior* liability under section 1983.  *Richardson v. Goord*, 347 F.3d 431, 435 (2d Cir. 2003); *Wright*, 21 F.3d at 501.  A supervisory official can, however, be liable in one of several ways: 1) the supervisor may have directly participated in the challenged conduct; 2) the supervisor, after learning of the violation through a report or appeal, may have failed to remedy the wrong; 3) the supervisor may have created or allowed to continue a policy or custom under which unconstitutional practices occurred; 4) the

19

supervisor may have been grossly negligent in managing the subordinates

who caused the unlawful event; or 5) the supervisor may have failed to act

on information indicating that unconstitutional acts were occurring.

*Richardson*, 347 F.3d at 435; *Wright*, 21 F.3d at 501; *Williams v. Smith*,

781 F.2d 319, 323-24 (2d Cir. 1986).

Defendants' assumptions regarding the basis for plaintiff's claims

against defendant Goord appear at least to some extent to be well

founded, and are confirmed both by his complaint and the papers

submitted by him in opposition to defendants' motion.  Plaintiff's amended

complaint alleges that by virtue of his supervisory position, Commissioner

Goord is charged with the responsibility of insuring compliance with

applicable laws, rules and regulations within Watertown.  Amended

Complaint (Dkt. No. 5) ¶¶ 10, 11.  Plaintiff's amended complaint is devoid

of any further allegations of complaints by him to Commissioner Goord, or

his involvement in the violations alleged.  In papers submitted in opposition

to defendants' motion, plaintiff makes it even clearer that the basis for his

complaint against Commissioner Goord is the ultimate supervisory

responsibility which he exercises as Commissioner of the DOCS, noting

that

> Commissioner Goord in his capacity is the Chief
> Executive Officer of the Department of Correctional
> Services and as such is responsible for all of it's
> [sic] agents and employees, maintenance and
> administration, and full operation of all it's [sic]
> departments.

Plaintiff's Local Rule 7.1(a)(3) Statement (Dkt. No. 34) ¶ 40.  These

allegations are insufficient to implicate Commissioner Goord in the

constitutional violations alleged.  *Richardson*, 347 F.3d at 435 ("[M]ere

'linkage in the prison chain of command' is insufficient to implicate a state

commissioner of corrections or a prison superintendent in a § 1983 claim.")

(citations omitted); *see also*, *e.g.*, *Gill v. Mooney*, 824 F.2d 192, 196 (2d

Cir. 1987) (dismissal appropriate where plaintiff does no more than allege

that defendant was in charge of prison); *Ayers v. Coughlin*, 780 F.2d 205,

210 (2d Cir. 1985) (same).

Plaintiff's allegations regarding personal involvement on the part of

defendant Newton stand on slightly different footing.  In his complaint,

Crespo alleges that Superintendent Newton was aware of plaintiff's

circumstances by virtue of having received and reviewed plaintiff's

grievance regarding the matter, but failed to take appropriate steps to

rectify the ongoing constitutional violation alleged.  Amended Complaint

(Dkt. No. 5) ¶¶ 51-52.  The record discloses, however, that plaintiff's

grievances regarding the matter did not go to the Superintendent's office until May 25, 2000, by which time plaintiff's hand injury was resolved, and his visits to the prison clinic had ended.[8]  Defendants' Exhibits (Dkt. No. 32) Exh. F, at 6.  Accordingly, there is no reason from the record to believe that defendant Newton was either personally involved in, or even aware of, the constitutional violations alleged at a sufficiently early juncture such as to support a finding of liability against him.  *See*, *e.g.*, *Williams v. Koenigsmann*, No. 03Civ.5267, 2005 WL 1115426, at *5 (S.D.N.Y. May 10, 2005) (superintendent not personally involved in medical indifference claim when grievance had become moot by the time he became aware of it).

IV.   SUMMARY AND RECOMMENDATION

The record in this case reflects the existence of a significant delay between the point in time when plaintiff first presented himself to health officials at Watertown with complaints of an injury to his hand and the review of his case by a physician and the subsequent ordering of x-rays. When construed in a light most favorable to the plaintiff, the record also suggests that the delay caused plaintiff to suffer additional pain and

---

[8]      The record reflects that plaintiff's grievances were forwarded to Acting Superintendent Lance Mason for review.  Defendants' Exhibits (Dkt. No. 32) Exh. F, at 7.

aggravation of his condition.  Plaintiff's deliberate indifference claims are therefore legally sufficient, and are not subject to dismissal at this stage in the proceedings.

Addressing defendants' claim of lack of personal involvement on the part of Commissioner Goord and Superintendent Newton, I find that neither plaintiff's complaint nor the record discloses any basis upon which a reasonable factfinder could find personal liability on the part of either of those defendants for the acts complained of, there being no evidence in the record of their specific awareness of plaintiff's complaints and failure to intercede on his behalf at any time prior to resolution of his hand injury.  I therefore recommend that defendants' motion to dismiss plaintiff's claims against Commissioner Goord and Superintendent Nelson, based upon the lack of their personal involvement in the deprivations alleged by the plaintiff, be granted.

Based upon the foregoing it is hereby

RECOMMENDED that defendants' motion for summary judgment dismissing plaintiff's complaint (Dkt. No. 32) as against defendants Goord and Newton, based upon the lack of their personal involvement in the constituted violations alleged, be GRANTED, but that defendants' motion

23

for summary judgment be DENIED in all other respects.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have ten days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. FAILURE TO OBJECT TO THIS REPORT WITHIN TEN DAYS WILL PRECLUDE APPELLATE REVIEW. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(e), 72; *Roldan v. Racette,* 984 F.2d 85 (2d Cir. 1993).

It is further ORDERED that the Clerk of the Court serve a copy of this report and recommendation upon the parties by regular mail.

Dated:      August 5, 2005
             Syracuse, NY

David E. Peebles
U.S. Magistrate Judge

G:\prisoner\crespo.wpd

24