UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆

**DIONISIO CRESPO,**

                    **Plaintiff,**

          v.                                       9:02-CV-1587 (NAM)

**GLENN S. GOORD, Commissioner of
NYS DOCS; L. DIEHL, Clinical Nurse II;
D. MISSERCOLAH, Clinical Nurse II; M.
DIETTERICK, Clinical Nurse II; K. DONAGHY,
Clinical Nurse II; DR. AMATUCI, Watertown
Correctional Facility Health Services Director;
J. OKAY, Clinical Nurse Administrator at Watertown
Correctional Facility; J. NEWTON, Superintendent
at Watertown Correctional Facility,**
                             **Defendants.**

◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆

APPEARANCES:
DIONISIO CRESPO
Plaintiff, *Pro Se*

HON. ELIOT SPITZER
Attorney General, State of New York
Maria Moran, Esq., of Counsel
Assistant Attorney General
615 Erie Boulevard West
Suite 102
Syracuse, New York 13204-2455

**Hon. Norman A. Mordue, D.J.:**

**MEMORANDUM-DECISION AND ORDER**

**INTRODUCTION**

     Plaintiff, an inmate in the custody of the New York State Department of Correctional

Services ("DOCS"), brought this action for monetary relief under 42 U.S.C. § 1983, alleging that

defendants violated his Eighth and Fourteenth Amendment rights by exhibiting deliberate

indifference to his serious medical needs. Defendants' motion for summary judgment was

referred to United States Magistrate Judge David E. Peebles for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.3(c).

Magistrate Judge Peebles has prepared a Report and Recommendation recommending that the motion be granted to the extent of dismissing plaintiff's claims against Glenn S. Goord, Commissioner of DOCS, and J. Newton, Superintendent at Watertown Correctional Facility, on the ground of lack of personal involvement.  Magistrate Judge Peebles recommends that the motion be otherwise denied.  Defendants object to that part of Magistrate Judge Peebles' Report and Recommendation which recommends denial of summary judgment with respect to all other defendants.

Pursuant to 28 U.S.C. § 636(b)(1)(C), this Court conducts a *de novo* review of those parts of a magistrate judge's report-recommendation to which a party specifically objects.  Where only general objections are filed, the Court reviews for clear error.  *See Brown v. Peters*, 1997 WL 599355,*2-* 3 (N.D.N.Y.), *aff'd without op.*, 175 F.3d 1007 (2d Cir. 1999).  Failure to object to any portion of a report-recommendation waives further judicial review of the matters therein.  *See Roldan v. Racette,* 984 F.2d 85, 89 (2d Cir. 1993).

For the reasons set forth below, the Court adopts the Report and Recommendation in its entirety.

## BACKGROUND

This Court adopts Magistrate Judge Peebles' summary of the factual background of the case, which is as follows:

> At the times relevant to his claims, including from the time of his arrival there in March of 1995 until his transfer to another facility in October, 2000, plaintiff was a New York State prison inmate confined within the Watertown Correctional Facility ("Watertown").  Plaintiff's claims in this action stem from an incident which occurred

at Watertown on or about March 21, 2000, when he reportedly hit his right hand against the wall while sleeping. As a result of the incident plaintiff appeared on that date at an emergency sick call in the facility's health clinic, complaining of pain in his right hand, and was seen at that time by defendant L. Diehl, a registered nurse. Upon examination, Nurse Diehl observed swelling and tenderness in the anterior area of Crespo's right hand, near his wrist, and prescribed Tylenol and application of ice to the area, as necessary, encouraging plaintiff to return to the clinic if further treatment was desired.

Plaintiff continued to experience pain and swelling in his right hand after that initial treatment, resulting in additional visits to the clinic where he was seen on March 22, 2000, by D. Misercola, a registered nurse; on March 26, 2000, when he received treatment from M. Dietterich, a registered nurse; on March 27, 2000, when he was seen by L. Shannon, a registered nurse; and on April 4, 2000 when he was again examined by Nurse Misercola. During each of those visits plaintiff was prescribed various pain relief medications, including Tylenol and Advil, and was told to utilize ice or soaking to address the pain and swelling. It was not until April 4, 2000 that health care workers at the facility suggested that Dr. Amatucci, a DOCS physician employed at the facility, be consulted regarding plaintiff's circumstances.

After reviewing plaintiff's situation on April 4, 2000, Dr. Amatucci determined that x-rays should be taken. In light of the fact that the health clinic at Watertown was not equipped to take x-rays, arrangements were made for those x-rays to be taken on April 14, 2000 at the Gouverneur Correctional Facility, and then transmitted to an outside radiologist for review. During the intervening period while plaintiff was waiting to be x-rayed, he was seen at the clinic on April 6, 2000 and April 14, 2000, again complaining of pain and swelling. During those visits plaintiff was prescribed Ibuprofen pills and an ace bandage for support.

On April 16, 2000 the results of plaintiff's x-rays were reported to medical staff at Watertown, reflecting a probable two bone fracture of the right hand. Having determined that plaintiff had experienced a fracture, and in light of Dr. Amatucci's vacation schedule, medical staff personnel at Watertown arranged to have plaintiff's hand examined on April 17, 2000, by an outside physician at a remote location by means of a teleconferencing system. As a result of that examination, plaintiff was transported to Samaritan Medical Center's emergency room later that same day for evaluation and treatment. After plaintiff was seen in the hospital's emergency room, a Masson Allen splint and ace bandage were applied to plaintiff's right hand, and he was discharged with instructions to follow-up with an orthopedic doctor.

Plaintiff was ultimately seen on April 26, 2000 by an orthopedic specialist, Dr. Ngg Bhat, at the Hepburn Medical Center. Based upon his examination Dr. Bhat concluded that plaintiff suffered from a mini-Bennett's fracture with moderate displacement and pieces of the metacarpal, with evidence of early healing. In light of his findings, Dr.

> Bhat recommended against operative treatment. Plaintiff's subsequent request for a second opinion, based upon his concerns over the healing of his right hand, were denied by Dr. Hentchel, the DOCS Regional Medical Director, in consultation with Dr. Amatucci.
>
> Following his emergency room treatment, plaintiff continued to appear at the facility's health clinic to voice complaints regarding his right hand, reporting continued pain and swelling during visits on May 18, 2000 and May 23, 2000. Plaintiff's renewed complaints were brought to Dr. Amatucci's attention on or about May 23, 2000, resulting in additional x-rays being taken and a follow-up appointment with Dr. Bhat being scheduled. X-rays taken at the Samaritan Medical Center on May 25, 2000 indicated that the fracture base of plaintiff's fifth metacarpal showed signs of early healing, and resulted in renewal of plaintiff's permit for an ace bandage and continued medical excuse from work assignment for an additional thirty days.
>
> Plaintiff's second appointment with Dr. Bhat occurred on June 22, 2000. Based upon that examination, Dr. Bhat noted that plaintiff's fracture was healing, and there was increased range of motion, resulting in a recommendation against further treatment.
>
> Dr. Amatucci met with plaintiff on June 23, 2000 to discuss Dr. Bhat's findings. During that meeting, plaintiff was advised that Dr. Hentchel had indicated a willingness, based upon Dr. Amatucci's recommendation, to authorize a referral to a hand specialist, at no expense to Crespo. Defendants assert that the offer was rejected, however, with plaintiff later expressing his desire on June 26, 2000 to go back to work at the prison.
>
> Plaintiff's medical records do not reflect the existence of any further complaints regarding his wrist until August 26, 2000, when he appeared at the facility's health clinic requiring treatment for multiple injuries suffered during an apparent altercation with another inmate.

(Footnotes and citations to record omitted.)

In his amended complaint plaintiff alleges that defendants Diehl, Misercola, Dietterich and Donaghy, the nurses who examined him at various sick calls at the facility, "gave only a glance touch and feel examination" of his hand. He states that each of them "exercised deliberate indifference to Plaintiff Crespo's serious medical needs by misdiagnos[ing] his injury and ignor[ing] his complaint of extreme pain and suffering." With respect to the remaining defendants, plaintiff claims that each was deliberately indifferent because he "failed to protect

[plaintiff] as a ward of the state from further damages, after he was aware of the Plaintiff['s] injury and numerous complaint[s] of considerable pain and suffering." As a result of defendants' deliberate indifference, plaintiff claims, he "was subjected to suffer two separate and unsuccessful surgeries, permanent deformity, lack of movement and permanent ... considerable pain on his right hand[.]"

In his affidavit in opposition to the summary judgment motion, plaintiff avers that on his first visit to sick call, he requested an x-ray for his hand. During that visit, defendant Diehl said that "it might be broken," but merely told him to ice the area, take Tylenol and return to work. On his next visit, he again requested an x-ray. His range of motion was worse, but he was merely given Advil and told to soak the area. Plaintiff further describes additional visits, in which he displayed increasingly deteriorating symptoms. On his fourth visit he was told "to stop coming to sick call or he would receive a misbehavior report." At no time was he excused from work. Plaintiff further alleges that his repeated requests for x-rays were denied "because Watertown C.F. does not have x-ray equipment and they didn't want to be bothered with the requirements of transporting the Plaintiff to Gouverneur C.F. for x-rays." He further claims that in January 2001, after he was transferred to another facility, he attempted to perform his work as an electrician for about a month, but could not continue to perform his work functions without severe pain due to symptoms of the fracture.

Magistrate Judge Peebles points out that an entry dated April 17, 2000, made in plaintiff's prison health records regarding a telephone report received at the facility from a nurse at the Samaritan Medical Center, notes a one month old fracture of the right hand, and notes further that staff at Samaritan "might have manipulated [the] fracture if seen earlier."

## DISCUSSION

The Court adopts Magistrate Judge Peebles' statement of the applicable law with respect to Eighth Amendment claims of deliberate indifference to serious medical needs. As Magistrate Judge Peebles observes, the deliberate indifference standard embodies both an objective and a subjective prong. First, the alleged deprivation must be, in objective terms, "sufficiently serious." *Hathaway v. Coughlin*, 37 F. 3d 63, 66 (2d Cir. 1994). Second, the official must act with a sufficiently culpable state of mind. *Id.*

It does not appear that defendants object to Magistrate Judge Peebles' conclusion that plaintiff's condition was "sufficiently serious." In any event, upon *de novo* review, this Court adopts the Report and Recommendation in this respect. Plaintiff's allegations of chronic and substantial pain and disability sufficiently allege that a serious medical condition existed such that the failure to treat the condition could result in further significant injury or the unnecessary and wanton infliction of pain. *See Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998); *see also Hathaway*, 37 F. 3d at 66. With respect to damages resulting from failure to treat the condition, it is significant that an entry in plaintiff's medical records indicates that staff at Samaritan Medical Center might have manipulated plaintiff's one-month old fracture if he had been seen earlier; as Magistrate Judge Peebles states, this entry, "construed in a light most favorable to the plaintiff, suggests the possibility that the defendants' failure to order x-rays and intervene at an earlier stage may have caused the plaintiff's hand condition to be aggravated, even perhaps with a potential degree of permanency."

The Court now turns to defendants' challenge to Magistrate Judge Peebles' Report and Recommendation regarding the second prong of the deliberate indifference standard, that is,

whether defendants acted with a sufficiently culpable state of mind.  A prisoner must demonstrate more than "an inadvertent failure to provide adequate medical care" by prison officials to successfully establish Eighth Amendment liability.  *See, e.g., Estelle v. Gamble*, 429 U.S. 97, 105-06 (1976) (noting that mere negligence in diagnosis or treatment is insufficient to state a valid Eighth Amendment claim and emphasizing that "[m]edical malpractice does not become a constitutional violation merely because the victim is a prisoner").  Rather, the prisoner must show that the official acted or failed to act with deliberate indifference, which requires more than negligence, but less than conduct undertaken for the very purpose of causing harm. *See Farmer v. Brennan*, 511 U.S. 825, 836 (1994).  A prison official does not act in a deliberately indifferent manner unless that official "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id*. at 837.

The Second Circuit has noted that summary judgment is not appropriate "where there is an underlying dispute as to whether legitimate medical claims were deliberately disregarded as punishment ... or for other invalid reasons." *Harrison v. Barkley,* 219 F.3d 132, 138 (quoting *Archer v. Dutcher*, 733 F.2d 14, 17 (2d Cir.1984)).  In *Harrison*, the plaintiff alleged that prison medical officials refused to remove one of defendant's teeth, which was decayed and painful, unless he also agreed to the removal of another tooth.  The court noted that "outright refusal of any treatment for a degenerative condition that tends to cause acute infection and pain if left untreated" constitutes deliberate indifference on the part of prison officials.  In *Hathaway*, the Court held that an allegation of a two-year delay in arranging for hip surgery, despite defendant's

knowledge that the metal pins in plaintiff's hip had broken and that plaintiff was experiencing increased hip pain, could constitute the required deliberate indifference. *See* 37 F.3d at 68-69. And in *Chance*, the court stated that if plaintiff were able to prove that defendants recommended tooth extraction instead of less invasive treatment due to monetary incentives, such proof would show that the defendants had a culpable state of mind. 143 F.3d at 704; *see also Williams v. Vincent*, 508 F.2d 541, 544 (2d Cir. 1974) (a physician may be deliberately indifferent if he or she consciously chooses "an easier and less efficacious" treatment plan).

Here, plaintiff claims that the first time his hand was examined, the nurse said that "it might be broken." He states that thereafter, his symptoms progressively worsened, including increased pain, bruising and loss of movement, but each time he sought treatment the nurses examined his hand in a cursory fashion and attempted no new type of treatment or diagnostic procedure for weeks. He claims that he was never excused from work despite the fact that, if the hand was broken, the bones should have been immobilized until they healed. The notation in the Samaritan Medical Center record indicating that the delay in diagnosis and treatment might have prevented "manipulation" of the fracture tends to support the conclusion that prompt diagnosis and treatment of such an injury was important because it would have enabled medical staff to "set" the bone properly, thus sparing plaintiff the alleged progressive deterioration, pain and permanency of his condition.

These factors, combined with the allegation that one nurse threatened plaintiff with a misbehavior report if he persisted in coming to sick call, and the allegation that defendants "did not want to be bothered" to transport plaintiff to Gouverneur for x-rays, are sufficient to support an inference of an improper motive, that is, that defendants – who allegedly knew that there was

a substantial likelihood that plaintiff had fractured his hand, that early diagnosis could facilitate treatment, and that lack of treatment could result in increasing pain and disability – purposefully ignored or minimized plaintiff's complaints, thus avoiding the inconvenience and/or expense involved in providing proper diagnosis and treatment, including transport for an x-ray and orthopedic consult.  For this reason, there is enough in the record to make out a claim of deliberate indifference on the part of defendants, rather than mere negligence or medical malpractice.

## CONCLUSION

It is therefore

ORDERED that the Report and Recommendation of United States Magistrate Judge David E. Peebles is approved and adopted in its entirety; and it is further

ORDERED that the motion for summary judgment dismissing plaintiff's complaint is granted with respect to all claims against defendants Glenn S. Goord and J. Newton, based upon the lack of their personal involvement in the constitutional violations alleged; and it is further

ORDERED that the motion is otherwise denied in all respects.

IT IS SO ORDERED.
September 12, 2005
Syracuse, New York

Norman A. Mordue
U.S. District Judge